# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| CINDY TU POWELL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | 7:11-CV-105 (HL) |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on August 11, 2011, challenging the Commissioner's final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh

the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  In Step One, the Commissioner determines whether the claimant is working.  In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits her ability to carry out basic work activities.  At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations.  At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work.  Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed an application for disability insurance benefits and Supplemental Security Income in February 2007. (Tr. 111-121).  Her claim was denied initially and upon reconsideration. (Tr. 60-71, 74-81).  A hearing was held before an Administrative Law Judge ("ALJ") in Macon, Georgia on March 6, 2009.  (Tr. 13, 27).  Thereafter, in a hearing decision dated June 29, 2009, the ALJ determined that Plaintiff was disabled as of October 30, 2006.  (Tr. 13-26).  The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the

Commissioner.  (Tr. 1-3).

*Statement of Facts and Evidence*

Plaintiff was thirty-nine (39) years of age at the time of the hearing before the ALJ, and alleged disability since January 16, 2001, due to arthritis, gout, pinched nerves, bone spurs, and fibromyalgia. (Tr. 111, 133).  Plaintiff completed high school, and has past relevant work experience as a ward clerk, cashier II, nurse assistant, and routine office clerk.  (Tr. 24, 33).

As determined by the ALJ, prior to October 30, 2006, Plaintiff had the following impairments: "mild depression; cervicalgia; lumbago; acute bronchitis; obesity; acquired hypothyroidism (controlled with medications); and allergic rhinitis."  (Tr. 15).  The ALJ found that Plaintiff did not have a severe impairment or combination of impairments prior to October 30, 2006.  (Tr. 15).  Beginning on October 30, 2006, the ALJ determined that Plaintiff suffers from the following severe impairments: "degenerative disc disease –lumber spine; bilateral carpal tunnel syndrome; osteoarthritis –hands; asthma; obstructive sleep apnea; and, obesity".  (Tr. 21).  The ALJ found that Plaintiff could not return to her past relevant work, nor were there a significant number of jobs in the national economy that Plaintiff could perform; thus, Plaintiff was found to be disabled as of October 30, 2006.  (Tr. 24-26).

### DISCUSSION

Plaintiff alleges that the ALJ erred by finding Plaintiff had no severe impairments prior to December 31, 2004, by failing to apply SSR 83-20, and by failing to state the weight given to Plaintiff's treating physician. (Doc. 9).

*Determination of Severe Impairments*

Plaintiff alleges that the ALJ erred in her determination that Plaintiff did not have a severe impairment or combination of impairments prior to December 31, 2004, the date Plaintiff was last

insured. (Doc. 9). At the second step of the sequential evaluation, the ALJ considers the medical severity of Plaintiff's alleged impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the Commissioner finds that Plaintiff does not have a severe medically determinable impairment, or combination of impairments, that meets the duration requirement, a finding of "not disabled" is appropriate. *Id.* To meet the duration requirement, the impairment must have lasted, or be expected to last, for a continuous period of at least 12 months. 20 C.F.R. § 416.909.

"[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); SSR 85-28 (a finding of "not disabled" is appropriate "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities"). At the second step, medical evidence alone is evaluated in order to determine the effects of the alleged impairments on Plaintiff's ability to do basic work activities. SSR 85-28. The ALJ can conclude that Plaintiff is capable of engaging in substantial gainful activity without evaluating past work, age, or education, if the medical evidence shows that Plaintiff has the physical and mental abilities to perform gainful activities. *Id.*

Herein, the ALJ determined that, based on the medical evidence, Plaintiff did not have an impairment or combination of impairments that created a severe impairment prior to October 30, 2006. (Tr. 15). The ALJ found that Plaintiff's alleged medical impairments "did not cause more than a minimal impact on the claimant's ability to perform basic work activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments[.]" (Tr. 15). After outlining the medical evidence, the ALJ found that the objective medical evidence showed that Plaintiff was able to perform basic work activities after December 31, 2004. (Tr. 20).

The record shows very little objective medical evidence prior to 2006. In 1995, Plaintiff underwent a cholecystectomy (gallbladder removal). (Tr. 209). Plaintiff's physical exam prior to surgery was normal. (Tr. 211-12). Plaintiff was seen by a chiropractor in 2005 and 2006, but the medical reports contain no functional impairments. (Tr. 218-40). From 2002-2004, Plaintiff presented to Doctor Edd Jones with allergies, leg pain, acute pharyngitis, a respiratory infection and acute bronchitis, back pain, and depression. (Tr. 370, 372, 376, 385, 388). Plaintiff was not seen regularly for any one complaint and the records do not contain any indication that the complaints caused impairments.

Plaintiff appears to allege that she was unable to afford treatment for her alleged impairments and that "might explain why she did not seek more extensive medical treatment prior to December 31, 2004." (Doc. 9, p. 15). Plaintiff, however, does not point to any evidence contained in the record that Plaintiff was unable to afford treatment.

The objective medical evidence documenting Plaintiff's complaints prior to December 31, 2004, at most contains diagnoses, but no impairments. "A diagnosis alone is an insufficient basis for a finding that an impairment is severe." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter*, 791 F.2d at 1547; *see Dixon v. Barnhart*, 151 Fed. Appx. 810, 812 (11th Cir. 2005) (the plaintiff "did not have a severe impairment because [s]he was not significantly limited by a physical or mental impairment").

There is no medical evidence showing Plaintiff's alleged impairments caused Plaintiff any

physical problems that would be expected to interfere with her ability to work prior to December 31, 2004. The medical records fail to show any medical signs or laboratory findings that indicate Plaintiff's complaints caused an impairment that limited Plaintiff's ability to engage in substantial gainful activity. At most, Plaintiff was occasionally seen by a doctor for acute problems, which does not prove that her alleged ailments caused a severe impairment. *See McCruter*, 791 F.2d at 1547 ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work"). There appear to be no documented physical limitations caused by Plaintiff's alleged impairments prior to December 2004.

As there is substantial evidence to support the ALJ's conclusion that Plaintiff did not have an impairment or combination of impairments that created a severe impairment prior to December 31, 2004, the ALJ did not err in her consideration of Plaintiff's impairments.

*SSR 83-20*

Plaintiff contends that the ALJ failed to call a medical expert to determine Plaintiff's onset date, which resulted in reversible error. (Doc. 9). Under SSR 83-20, a disability onset date in disabilities of nontraumatic origin (such as Plaintiff's degenerative disc disease) is determined based on the claimant's alleged onset date, the work history of the claimant, and medical and other evidence. SSR 83-20. The date the applicant alleges should be used if it is consistent with all the evidence. *Id.* However, "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.*

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical

6

> and other evidence that describe the history and symptomatology of the disease process.

*Nixon v. Astrue*, 2012 WL 5507310, *4 (N.D. Ga, Nov. 14, 2012) (quoting SSR 83-20).

The ALJ "should call on the services of a medical advisor when onset must be inferred." SSR 83-20. "[C]ourts have generally interpreted SSR 83-20 to require that an ALJ obtain the opinion of a medical expert when the medical evidence is either inadequate or ambiguous as to the specific date of onset." *Nixon*, 2012 WL 5507310 at *4.

Herein, the ALJ found that

> [b]eginning on October 30, 2006, the claimant has had the following severe combination of impairments: degenerative disc disease –lumbar spine; bilateral carpal tunnel syndrome; osteoarthritis-hands; asthma; obstructive sleep apnea; and obesity[.]
>
> . . .
>
> The claimant was not disabled prior to October 30, 2006 (20 CFR 404.1520(c) and 416.920(c)), but became disabled on that date and has continued to be disabled through the date of this decision[.]

(Tr. 21, 26). The ALJ discussed Plaintiff's medical records, focusing on January 2006 forward. (*See* Tr. 22-23). However, the ALJ does not clearly articulate her reasoning or her findings of fact that led to the decision that Plaintiff's onset date was October 30, 2006.

The Commissioner asserts that October 30, 2006 was when Plaintiff began seeing specialists, "thereby indicating the severity of her symptoms had increased." (Doc. 10, p. 18). It does appear from the record that Plaintiff was seen by Dr. James Mossell, III at the Arthritis and Osteoporosis Center of South Georgia on October 30, 2006. (Tr. 309). However, the ALJ does not articulate this as the basis for her decision to find Plaintiff's disability onset date was October 30, 2006.

"The Court must focus its review on the reasons provided by the ALJ and not the *post* hac

justifications presented by the Commissioner." *Ward v. Astrue*, 2012 WL 695702, *7 (M.D. Fla. March 5, 2012) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). The Eleventh Circuit has declined "to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516.

The ALJ does not specifically state how this particular onset date was chosen or why the impairments became disabling on October 30, 2006, but not before. The treatment notes from October 30, 2006 do not appear to, alone, support the ALJ's finding of disability on that date. Without clearly articulated reasoning, the Court cannot determine if the ALJ properly analyzed Plaintiff's onset date or whether the ALJ erred by failing to call a medical expert pursuant to SSR 83-20.

As it is unclear if the ALJ's opinion is supported by substantial evidence, it is the recommendation of the undersigned that this case be remanded so that the ALJ can clearly articulate her findings regarding Plaintiff's onset date, and, if necessary, call a medical advisor to assist in the determination of Plaintiff's onset date. *See Cornelius*, 936 F.2d at 1145 - 46 (failure "to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal"; *Alomar v. Commissioner of Social Security*, 2012 WL 3609854, *3-5 (M.D. Fla., Aug. 22, 2012) (remanding to the Commissioner because the ALJ did not provide a clear explanation as to how the onset date was chosen, and allowing the Commissioner to determine, on remand, whether to call a medical expert to determine onset date).

*Treating Physician*

Plaintiff alleges that the ALJ failed to give proper weight to the opinion of Dr. Edd Jones,

Plaintiff's treating physician, when determining Plaintiff's severe impairments. (Doc. 9). When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments. 20 C.F.R. § 404.1527(d)(2). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records. *Id.*

Herein, Plaintiff specifically alleges that the ALJ did not "assign any weight to Dr. Jones (sic) opinion as to [Plaintiff's] musculoskeletal pain noted and diagnosed." (Doc. 9, p. 17). The ALJ did not state with specificity the weight given to Dr. Jones's medical records. (*See* Tr. 18-21). Rather, the ALJ outlined the medical records and indicated that Dr. Jones diagnosed and conservatively treated Plaintiff for back pain and left leg/ankle pain. (Tr. 18).

The record contains only the treatment notes of Dr. Jones. (Tr. 367-390). The ALJ did not specify the weight given to these treatment notes; however, her opinion seems to afford Dr. Jones's assessments substantial weight. The ALJ appears to rely on Dr. Jones's treatment notes when determining Plaintiff's medically determinable impairments. The ALJ found Plaintiff had the following medically determinable impairments: "mild depression; cervicalgia [neck pain]; lumbago [back pain]; acute bronchitis; obesity; acquired hypothyroidism (controlled with medications); and, allergic

9

rhinitis." (Tr. 15). Dr. Jones's treatment notes show that Plaintiff was diagnosed with hypothyroidism-acquired, upper respiratory infections, allergic rhinitis, depression, back pain, and acute bronchitis. (Tr. 369, 371, 385, 388). Several of Plaintiff's medically determinable impairments were diagnosed by Dr. Jones. Further, the ALJ relied on Dr. Jones's treatment notes to find Plaintiff lacked credibility, as the notes showed that Plaintiff was conservatively treated for hypothyroidism, benign hypertension, acute bronchitis, and obesity. (Tr. 17-18).

Although the ALJ did not specifically state the weight given to Dr. Jones's treatment notes, it is clear from the ALJ's decision that she gave controlling, or at least great, weight to the treatment records. As it is clear from her decision that she gave controlling weight to Dr. Jones's treatment notes, the ALJ did not commit reversible error when she failed to explicitly state the weight given to those notes. *See Heppell-Libsansky v. Commissioner of Social Security*, 170 Fed.Appx. 693, 698 n. 4 (11th Cir. 2006) (finding the ALJ did not err when he did not explicitly state the weight given to a treating physician's opinion when the decision made it clear that the ALJ gave controlling, or at least great, weight to the opinion).

## CONCLUSION

As the Commissioner's decision in this matter regarding the onset date is not supported by substantial evidence, it is the recommendation of the undersigned that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405(g). It is the recommendation that on remand the ALJ clearly articulate her findings regarding Plaintiff's onset date, and, if it is determined to be necessary, call a medical expert to assist in the determination of Plaintiff's onset date.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this

Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED** this 29th day of January, 2013.

s/ ***THOMAS Q. LANGSTAFF***<br>
**UNITED STATES MAGISTRATE JUDGE**